# STATE OF WISCONSIN.

5 1
78 158

5 1
96 211

5 1
104 190

5 1
110 ⁵ 89
110 ⁵ 90
f110 ⁵ 93
53 LRA 608

## JAMES FRANKLAND, HENRY SHANKS and WILLIAM CRAIG, Complainants, Appellees,

### *vs.*

## ISAAC R. MOULTON, CHARLES H. FISH, SALENA MOULTON, et als., Defendants, Appellants.

#### APPEAL IN EQUITY FROM GREEN CIRCUIT COURT.

If a mortgagor place fixtures upon the mortgaged premises, they become part of the freehold, and he cannot remove them.

If a tenant of the mortgagor place the fixtures, the consequences are the same; the mortgagor cannot confer on his lessee a privilege he had not himself, at the time of making the lease.

*Quere.* If the possession of the personalty, annexed as fixtures, was obtained by mere bailment, and the annexation was made in fraud of the bailor, can the mortgagee prevent the severance?

If the mortgagor, with the consent of the owner of personalty, annex the same to the freehold, the fixture cannot be removed as against a prior mortgagee.

The owner of a steam engine sold, and consented and assisted to annex the same to the realty, reserving a chattel mortgage on the same for a part of the purchase money : *held,* that the chattel mortgage was inoperative as against a prior equitable mortgagee.

THE bill in this case was filed to obtain possession of certain property, viz : two steam engines, and their appurtenances, and

VOL. V.        1 .

to subject them to foreclosure and sale upon a chattel mortgage. The following is a brief statement of the material facts in the case:

In the early part of the year 1851, Isaac R. Moulton and Charles H. Fish, partners in business in Monroe, Green county, Wisconsin, engaged in the enterprise of building, in the village of Monroe, a steam flouring mill. In pursuance of such design, they purchased a lot of land, the title to which was taken in the name of Salena Moulton, for the purpose of securing to her the payment of $1,000, which she had loaned to them, and which was then due, together with interest thereon. Other mortgages were made upon the premises, not affecting the point in judgment in the case. Moulton and Fish procured the materials, and proceeded to erect the mill, and on the 20th of June, entered into a contract with the complainants, at Cleveland, Ohio, for the engines and machinery, for which they agreed to pay $2,300 over and above the expense of delivering and setting up the engines, &c.

When the engines were completed, the complainants sent an agent, Baker, to Monroe, to set them up, and to obtain security for the balance of the purchase money remaining unpaid, pursuant to the contract. The agent did come to Monroe, and there set up and put in operation the engines in the mill building, which had been erected upon the said lot.

The boilers for the engines were in an addition to the main building, the arches being built on a stone foundation, and over the boilers in such a manner as to render it necessary to throw down the erections to remove them. The cylinders were in the main building, and connected with the boilers by pipes passing through the walls of the mill. The engines were connected with the machinery by shafts and wheels, the removal of which would necessarily stop the mill, as they constituted its only power.

The fixing of these engines was completed on the 30th day of October, 1851, when, upon accounting, there was found due complainants the sum of $1,352.48, a balance of the purchase money of said machinery, which by arrangement between said agent,

Baker, and said Moulton and Fish, was evidenced by two promissory notes for $352.48 and $1,000 respectively, and was secured by a chattel mortgage upon " all the mill fixtures, boilers, engines, machinery and castings," executed by Moulton and Fish, and which was filed on the 31st day of October, 1851, in the office of the clerk of the town of Monroe.

The notes were not paid: Moulton and Fish became insolvent and went away to California; and Salena Moulton claimed to be the owner in fee of the premises, subject to a mortgage to one John B. Fish for $4,000, for alleged advances, which had been assigned to Emmerson, one of the defendants.

The bill charged that the claim of Salena Moulton to the premises was fraudulent; but the charge of fraud was not sustained by the proof and did not enter into the consideration of the court below, or of this court.

The bill prays for a decree allowing complainants to enter the premises, and take down and remove the engines, and subject them to foreclosure and sale under the chattel mortgage.

The answer of Salena Moulton denies notice of the contract between Moulton and Fish and complainants, and of the lien of the latter.

*J. A. Sleeper*, for complainants.

Moulton and Fish contracted with the complainants for the engines, boilers and machinery, to be completed and delivered in running order in the mill. They acquired no title until these engines were delivered by the complainants in the mill in running order. They were not delivered until the 30th day of October, 1851. At the same time, and as the witness testifies, before they were delivered, the chattel mortgage in question was executed and delivered. The delivery of the mortgage by Moulton and Fish, and the delivery of the property by complainants, were simultaneous acts; so that when the engines were put into the mill, and attached, in the manner stated by the witness, they belonged to the complainants and were in their possession: they have never for a moment parted with the title. The possession of Moulton and Fish was in fact the possession of the

complainants; and Salena Moulton and Emmerson, holding as they do, under Moulton and Fish, are themselves bailees of the complainants.

Salena Moulton and Emmerson are in possession, as mortgagees; and their possession as to complainants, has the same effect as the possession of Moulton and Fish would have.

*Knowlton, Knapp & Frink,* for defendants, made the following points:

I. The engines and machinery mentioned in the chattel mortgage, were fixed to, and made a part and parcel of the real estate.

In *Morgan vs. Arthurs* (3 *Watts,* 140), the court held, that the engine which propelled a steam mill was a part of the building.

In *Noble vs. Bosworth* (19 *Pick.* 314), where the owner of land set up three dye kettles in a brick work, the court held, that they passed with the land by deed, even where there was a parol agreement that they should not pass.

In *Goddard vs. Bolster* (6 *Greenleaf,* 427), the agent and tenant of the fee owner, inserted into a grist mill his own mill stones and mill irons; and it was held, that they became thereby the property of the owner of the mill, as part of the freehold, so that the agent could not lawfully sever them again, nor could his creditors seize them even though the mill had been destroyed by a flood and they alone remained.

To the same effect are also the cases of *Farrar vs. Stackpole* (*Id.* 154); and *Rice vs. Adams* (4 *Harr.* 332).

II. The engines, &c., being a part of the freehold enured to the benefit of John B. Fish, the mortgagee, and his assignee, Emmerson, and also to the benefit of Salena Moulton, either as the owner of the fee, or as an equitable mortgagee.

In the case of *Roberts vs. The Dauphin Deposite Bank* (3 *Harris,* 71), it is decided that a steam engine and boilers fixed in an anthracite furnace for the manufacture of iron, are a part of the realty; and if put up after the making of a mortgage, they constitute a part of the mortgage security, and are not liable to removal by the mortgagor or his assigns, if such removal is

injurious to the mortgagee, who has a right to the appreciation of the mortgaged premises from any cause.

To the same effect are also *Lyle vs. Ducomb* (5 *Binney*, 585); *Degraffenreid vs. Scruggs* (4 *Humph.*.453); *Powell vs. The Bronson and Brimfield Man. Co.* (3 *Mason*, 459, 467); *Winslow vs. The Mer. Ins. Co.* (4 *Met.* 306); and *Spacks vs. The State Bank* (7 *Blackf.* 469).

*By the Court*, WHITON, C. J. Admitting, as is contended by the counsel for complainants, that the sale of the engine, boilers, &c., to Moulton and Fish was not perfected until they were placed in the mill, and that the chattel mortgage was executed by Moulton and Fish to the complainants at the same time that the title vested in them by the sale; and admitting, further, as is also claimed by the complainants, that the property is of the kind that when annexed to the freehold, is denominated fixtures, such as, between landlord and tenant, would be subject to removal by the latter during his term, if annexed by him, how stands the case in relation to the prior equitable mortgagee, or owner in fee?

Admitting that Salena Moulton is only the equitable mortgagee, and not the owner in fee, we think it clear, from the authorities, that if the mortgagors, Moulton and Fish, had placed the fixtures in the mill, and had owned them, they could not have removed them; for the reason, that as between the mortgagor and mortgagee they became a part of the freehold. *Winslow vs. Merchants' Insurance Co.*, 4 *Met. R.* 306; *Butler vs. Page*, 7 *Id.* 40; *Carless vs. McLugan*, 29 *Maine R.* 115.

Could the complainants do it? We think not. The learned judge, who decided the case at the circuit, says, in the written opinion which he gave: "I am inclined to hold that, as to the property mentioned in the chattel mortgage, the plaintiffs, under the clause in the chattel mortgage authorizing them to enter upon the realty and remove the property upon default, stand in relation to Moulton and Fish as tenants, so far as to enable them to enter and make the severance of the fixtures; that at all events it amounted to a license which equity would enforce

as against them. But how does this affect the prior mortgagee of the realty? If Moulton and Fish, as the equitable owners of the fee (subject to the mortgages), should sub-let to a tenant, the fixtures erected by the tenant would not, in my opinion, become attached to the realty, so as to subject them to those mortgages existing before they were affixed, at all events, till after a foreclosure, with notice to the tenant of such fore-closure, by being made a party to the suit, or by notice published under the statute, that he might be enabled to re-move his property. No principle of equity would allow the lessor, by his act of surrender, to defraud the tenant of his property by putting an end to the term. There should be a foreclosure in such a manner as to cut off the equity of redemp-tion. The ground, alone, upon which the doctrine can be maintained that such fixtures, annexed by the mortgagor, are subject to a prior mortgage of the realty, is, that he, at the time of such annexation of the fixtures, is the owner of the fixtures."

We cannot concur in the opinion of the learned judge. Ad-mitting that the complainants may be regarded as the tenants of the mortgagors, Moulton and Fish (which seems somewhat doubtful), still as Moulton and Fish had no right to remove the fixtures, we do not see how they could confer any such right upon their tenants; they could give to the complainants no greater rights than they possessed themselves.

Nor are we able to agree with the learned judge in holding that " the ground alone upon which the doctrine can be main-tained that fixtures annexed by the mortgagor are subject to a prior mortgage of the realty, is, that he, at the time of such an-nexation of the fixtures, is the owner of the fixtures."

We do not intend to discuss the question as to the effect of the annexation of such property to the realty by a mortgagor who has obtained possession of it by a bailment, and who makes the annexation in fraud of the bailor, as no such question arises in the case. But we think it clear that if the mortgagor should annex such property, without being the owner of it, with the consent and approbation of the owner, the consequences would be the same as though the mortgagor was its owner.

In the case before us it can make no difference whether we consider the sale of the engine to Moulton and Fish as perfect, so as to vest the title in them before the annexation, or not until afterwards. In the former case the act of annexing it would be their act, but with the consent, approbation and assistance of the complainants, through their agent, Baker; and in the latter the act would be that of the complainants themselves, but with the consent and approbation of Moulton and Fish, the mortgagors. In either case we think the chattel mortgage of Moulton and Fish gave no right to the property as against the mortgagee, or owner in fee of the realty. *Fryatt vs. Sullivan Co.*, 5 *Hill*, 116.

Decree reversed, with costs.