### W. F. DEAL v. W. PALMER.

It is not error, for a Judge in the Court below, in an action of eject-
ment, to charge the jury, that a "carding machine," requiring several
men to move it, not fastened to the house in which it was used, was
a fixture, and nothing else appearing, passed with the land.

Nor is it error to charge, that although the plaintiff, a mortgagee, had
title to a "carding machine," and he afterwards chose to buy the
mortgagor's interest in the same and pay his price therefor, the sale
would be a valid and a good one.

An unregistered mortgage, though binding as between the mortgagor and
mortgagee, is not valid as to a third party purchasing the mortgaged
property for a valuable consideration and without notice.

(The case of *Gaither* v. *Teague*, 7 Ired. 460, cited and approved.)

CIVIL ACTION, in the nature of Ejectment, tried before
*Henry*, *J.*, at Spring Term, 1874, BURKE Superior Court,
having been removed from Caldwell.

Among other things the defendant alleged that the only ti-
tle the plaintiff had to the land, was under an deed from the
sheriff of Caldwell county, made in pursuance of an execution
in his hands against the defendant, and that the sale of the
sheriff was void, on account of his failure to lay off a home-
stead for defendant.   The defendant farther alleges that at the
time the land was sold by the sheriff, the plaintiff was surety
for him, the defendant, for a small sum, and agreed before the
sale to bid off the land, and take a deed, and hold the land in
trust for the defendant, and as soon as ths plaintiff was released
from said suretyship and repaid his advances, to re-convey the
land to defendant's wife and children.   That he had paid the
debts for which the plaintiff was surety, and also the money
paid for the land.

The case was submitted to the jury upon the following
issues :

1. Did the plaintiff buy the defendant's land, intending
to allow the defendant to redeem it, by paying all money ad-

vanced by the plaintiff, and the debt for which the plaintiff was his security?

2. Has the defendant paid the money so advanced by the plaintiff and the debt aforesaid?

3. If not, how much is now due?

The plaintiff introduced in evidence a deed conveying to him the defendant's interest in the land in question, executed by the sheriff of Caldwell county, in pursuance of a sale, made in obedience to an execution issued from the Supreme Court of North Carolina.

The judgment and execution were admitted by the defendant. The plaintiff agreed that the 1st issue might be found in the affirmative.

The defendant was introduced as a witness for himself, and testified that at the time of the sale, he owned a mule worth about $100. That shortly after the sale, he delivered said mule to plaintiff with the understanding that he was to allow defendant $100 for said mule, and if he got more than $100 for it, he was to allow defendant the excess. That the price of the mule was to be applied to the re-payment of such money as plaintiff had paid, or should pay for defendant on certain exe- cutions, under which the land was sold. That plaintiff paid for defendant, on executions under which the land was sold, as follows: On a first execution, $17.46; on a second, $29; and on a third, $21. Plaintiff paid no other money for defendant. That the agreement in regard to the land was, that plaintiff was to bid off the land for defendant, take the sheriff's deed therefor, pay off the executions, and hold the land to se- cure the money so advanced, and also to indemnify him as se- curity for defendant on a note for $282.40, due one P. Carlton. Shortly after the sale of the land, the plaintiff took up the Carlton note, substituting his own therefor, and brought the note to defendant and proposed to swap it to defendant for a carding machine, situated on the land sold, and which defen- dant claimed. The machine was on the bank of a water course, was run by a water wheel, and was very heavy, requiring sev-

eral men to move it. The machine was worth $300. It was not fastened to the house in any way, but could have been picked up and carried off. Defendant assented to plaintiff's proposition. Shortly after this, the house and machine were burned.

The plaintiff testified as follows: " Before the sale I was requested by defendant to lend him the money to pay off these executions. I declined to furnish it, but in response to his repeated urging, agreed to buy his interest in the land, telling him that I made no children's trades, but that if he could repay me within a reasonable time, whatever money I paid out for him, I would re convey the land to his wife and children. I bought the land with this understanding. Just before the sale, in my brother's presence, at Lenoir, defendant, after calculating his personalty, with a view to see if it was covered by the homestead, and finding that he had $575, agreed to let me have a mule at $75, and have it credited on the note substituted by plaintiff for the defendant.

At the time of the mule trade, nothing was said about its being mortgaged to a third party, nor was I ever informed of it by the defendant. When calculating his personalty he put down his carding machine at $200, but was informed by my brother that the machine was real estate, and would be sold with the land. Defendant stated publicly that his title was good, and that no homestead would be claimed. The sale took place May 4th, 1869. After I had sold the mule, I was informed by one J. F. Munday, agent of Harriet Mull, who showed me a written instrument, reading as follows :

" Six months after date, I promise to pay Harriet Mull or order, forty dollars, the price of one mule colt bought of her, the mule to stand security for the price until paid for.

(Signed)                              W. PALMER."

On this note judgment had been given by a magistrate, and that judgment stayed by an insolvent man, now a discharged

bankrupt, and a second judgment given on the judgment so stayed. I paid off the debt amounting to $46.85, and took up the note and judgment. Soon after, I bought the land, and I understood that in buying the land, I also bought the carding machine. I went to see defendant in regard to the management of the machine. During the time I was there, at his request I left with him the note which I had signed as security, and which I had paid off, amounting to $282.40, but did not have the note with me, or pay it to him, in consideration of any purchase of any machine, or any other property. He said he wanted it to see from it just how we stood. A few days afterwards I asked him for it. He said that the machine and house had been burned; and this note was in a box in the machine house, and had been burned. Twelve months after the sale I demanded my money, but at his request I gave him six months longer. I then demanded my money and my land, but again granted six months delay. I then demanded that within two weeks my money should be paid, or my land surrendered. At the end of that time, nothing having been done, I sued the defendant. I have never received any money or property from the defendant, except the mule at $75, and have paid for him the note for $282.40, the execution of 18.20 and $46.80 on the mule.

The plaintiff and defendant both introduced witnesses to corroborate their testimony. The character of the plaintiff was proved to be good by several witnesses. Some of them saying that "it is as good as any body's."

The character of the defendant was shown by several witnesses to be bad, for not wanting to pay his debts, and by one witness to be bad in regard to statements concerning his debts.

His Honor instructed the jury: 1. That the carding machine was a fixture, and nothing else appearing, passed with the land to Deal.

2. That notwithstanding Deal had thus purchased it, and had title to it, if he afterwards chose to buy it again of Palmer,

giving him his price for it, the sale would be valid and a good one.

3. That as to the mule, although as between Palmer and Harriet Mull, the paper writing was a mortgage passing title; still as between Palmer and Deal, Deal being a purchaser for valuable consideration, without notice, it was void as to Deal, and Deal's payment to Munday, Mull's agent, was a voluntary one, for which he could have no recourse on Palmer, and that he was entitled to no credit for the amount so paid.

All the issues were found in favor of the defendant. Motion for a new trial; motion overruled. Judgment and appeal by plaintiff.

*Folk* and *Cilley*, for appellant.
No counsel *contra*, in this Court.

PEARSON, C. J.    We see no error in the instructions.

1. If the " carding machine " was not a fixture then clearly the dealing in regard to it was valid, and the defendant was entitled to have the price agreed on credited upon the mortgage debt.

2. If the " carding machine " was a fixture and constituted a part of the mortgaged premises, we can see no reason why the mortgagee was not at liberty to buy, and the mortgagor to sell his interest, that is, his right to redeem. So as to give the mortgagee an *absolute* title, discharged of the right to redeem.

Why should not an agreement by which the mortgagee takes, say, one-half *absolutely* and the mortgagor takes the other half discharged from the incumbrance, be valid ? This was the view taken of the case by his Honor and the jury, and we find no fault in it.

3. In respect to the payment of the judgment for the price of the mule, it was *officious*. The plaintiff could not in that way add to the encumbrance on the land, unless he was obliged to do so, in order to resist the claim of Mrs. Mull, without the assent of the defendant.

In *Gaither* v. *Teague,* 7 Ired. 460, an instrument somewhat similar in wording to the one in this case, was held, after much deliberation not to be evidence of a sale and a mortgage to secure the price; but only of an executory agreement to sell; here the words of the instrument admit of no question, it was the intention of the parties, and the legal effect of the instrument is to make a sale of the mule, with a mortgage to secure the price, so the instrument required registration in order to effect the title which the plaintiff had acquired, and he was not obliged to pay the judgment to protect himself. That the defendant did not consent to the payment by the plaintiff, so as to add to the amount of the encumbrance upon his land, is manifest from the fact, that he had declined to pay the judgment, and had sold the mule to plaintiff in order to reduce his property within tne limit allowed as a "personal property exemption;" of this the plaintiff had notice. So it is clear, the plaintiff had no right to add the sum paid to Mrs. Mull as an additional charge on the land, and can hold it only as her assignee, and take his chances to collect it, as she would have been able to do. We concur in the view taken of this matter by the Court and jury.

No error.

PER CURIAM.                    Judgment affirmed.