BENEDICT LAPHAM *vs.* SAMUEL NORTON.

Waldo. Opinion March 8, 1880.

*Water wheel. Fixture. Realty.*

The water wheel and gearing put into a mill to be used permanently for operating said mill, become fixtures and pass with the mill.

A mill built upon land in possession of the builder under a verbal contract for its purchase becomes a part of the realty, and the same result follows though built for a third person with an understanding that such third person will take the premises upon certain conditions.

Though a person in possession under a verbal contract of purchase is a tenant at will, he is not liable for rent so long as he performs the terms of his contract, or they are waived by the vendor. And all improvements made while such contract is in force are made under the agreement of purchase and not as tenant. In such case the principles of law applicable to landlord and tenant in relation to improvements made, do not apply; but in the absence of any other agreement, they become a part of the freehold, as in the case of mortgager and mortgagee.

ON REPORT.

TRESPASS against the sheriff of Waldo county, for the acts of J. L. Norton, his deputy, February 3, 1876, in taking with force and arms, carrying away and converting to his own use, one water wheel and gear thereto belonging, consisting of two iron shafts, two beveled gears and two drums, all of the value of eight hundred dollars.

Writ was dated October 1, 1877. Plea, general issue, with brief statement denying property in the plaintiff, etc.

The full court to decide the case according to the legal rights of the parties, with power to draw inferences as a jury might.

The report shows, that in 1870, Franklin Treat went into the possession of a lot of land, on which was a mill privilege, owned by George A. Pierce, under a verbal agreement for its purchase. While so in possession, he had charge of building a mill thereon, and the plaintiff furnished the money and means to build the mill, among which were the wheel and gearing, the title to which is the only matter in controversy. In 1874, the mill was destroyed by fire, and this wheel and gearing were subsequently removed to the barn of Mrs. Robert Treat, where they were seized by the defendant's deputy, at the time stated in the writ, as the

property of Franklin Treat, on an execution in favor of George Pierce, and sold to George Pierce, and the proceeds applied in part satisfaction of that execution.·

Franklin Treat, testified, that· he bought the premises of George A. Pierce, by oral agreement, with the understanding from previous conversations with plaintiff, on the subject, that on certain conditions he would take the premises ; that witness never made any payment nor gave any credit for the wheel and gearing, nor in any way acquired or claimed any property, right, title or interest in or to the same ; that witness was in possession of the premises at the time of the fire and at the time of the removal of the wheel and gearing, which was done by him under the direction of the plaintiff, to Mrs. Treat's barn.

*Wm. H. Fogler*, for the plaintiff.

Treat's occupancy was permissive.   Being in occupation under an agreement to purchase, he held as a tenant at will.   1 Washburn, R. P. 389 ; *Patterson* v. *Stoddard*, 47 Maine, 355 ; *Gould* v. *Thompson*, 4 Met. 224.   The mill, having been built on Pierce's land by his permission, never became a part of the realty, but remained the personal property of the plaintiff. *Russell* v. *Richards*, 1 Fairf. 429 ; and 2 Fairf. 371 ; *Hilborne* v. *Brown*, 3 Fairf. 162 ; *Jewett* v. *Partridge*, *Id.* 243 ; *Tapley* v. *Smith*, 18 Maine, 15 ; *Fuller* v. *Tabor*, 39 Maine, 519. Even if the wheel and gearing were fixtures annexed to .the freehold, the right of removal existed so long as the tenant remained in possession of the land.   *Davis* v. *Buffum*, 51 Maine, 160 ; *Dingley* v. *Buffum*, 57 Maine, 381 ; *Sullivan* v. *Carberry*, 67 Maine, 531 ; *Chase* v. *Wingate*, 68 Maine, 206. Pierce asserted no claim to the property, and by permitting its removal, he is estopped from asserting title ; and this defendant can assert no better title in Pierce than Pierce could in himself. Pierce's representative by seizing it as personal property of Treat, has recognized it as personal property.

*N. H. Hubbard*, for the defendant.

DANFORTH, J.   The report in this case shows, that, in 1870, Franklin Treat went into the possession of a lot of land, on

which was a mill privilege, owned by George A. Pierce, under a verbal agreement for its purchase. While so in possession, he built a mill thereon, either for himself or the plaintiff. Treat testifies that he bought the premises of Pierce, with an understanding from previous conversations with the plaintiff, that on certain conditions he would take them. It further appears that the plaintiff furnished the materials for the mill, among which was the wheel and gearing, the title to which is the only matter in controversy.

That this wheel was a part of the mill, there can be no doubt. *Farrar* v. *Stackpole*, 6 Maine, 154. It was not only used in, but adapted to it. Without the wheel the mill was incomplete, and could not be used. "It is not the mere fastening that is so much to be regarded, as the nature of the thing, its adaptation to the uses and purposes for which and to which the building is erected or appropriated." *Pope* v. *Jackson*, 65 Maine, 165; *Blethen* v. Towle, 40 Maine, 310. It is entirely unlike those movable machines referred to in *Pope* v. *Jackson*, "whose number and permanency are contingent on the varying circumstances of business,—subject to its fluctuating conditions, and liable to be taken in or out, as exigencies may require." The wheel was in as a permanent fixture, necessary for any and all uses for which the mill was erected.

As the wheel and gearing were a necessary part of the mill, so the mill was attached to, and a part of the freehold, and not personal property, as claimed by the plaintiff. True, in a certain sense, it was built by the permission of the owner of the land. He undoubtedly knew that it was to be built, and quite probably had knowledge of its progress while in process of construction, and made no objection to its erection. Why should he object? The land was under a contract of sale. The vender supposed, and had a right to suppose, that the conditions of sale would be fulfilled and the title pass by deed. There was, therefore, no duty resting upon him to make any objection to the building, nor does he lose any rights by a neglect so to do. On the other hand, the purchaser, if he acted in good faith, must have contemplated the completion of his contract and have intended

the mill as an addition to, or an improvement upon the land. It was then, legally within the expectation of both parties, that the mill was to be a fixture upon, and a part of, the freehold; and this intention conclusively decides its character, — for whether a building shall be a fixture, or personal property, depends upon a contract between the parties; not necessarily an express one, but if not express, then one which may fairly be implied from the circumstances.

This principle is clearly stated in 1 Cruise, 46, quoted approvingly in *Fuller* v. *Tabor,* 39 Maine, 521–2. It is there laid down as the rule, "that things personal in their nature, but fitted and prepared to be used with real estate, and essential to its beneficial enjoyment, having been fixed to the realty, or used with it, and continuing to be so used, become parts of the land *accessione et destinatione,* and pass with it by deed of conveyance."

But it is an exception to this rule, "when the parties previous to the annexation of things to the freehold have mutually agreed, that they shall not become parts of the realty, but shall remain the property of the person annexing them, or may be removed by him."

The cases cited by plaintiff's counsel to sustain his position, are not in conflict with this view of the law. In each of them the consent to build was given with no expectation that the title to the land built upon, was to pass, or with the understanding express or clearly implied, that the erections were not to become fixtures, but were to be and remain the property of the person constructing them.

The only case which can be said in any degree to support the plaintiff's view, is that of *Pullen* v. *Bell,* 40 Maine, 314. But an examination of this case will show the support more apparent than real. No reason is given for the conclusion reached, no allusion to any facts upon which it is grounded, but simply the remark that the "principles of *Russell* v. *Richards et al.* 1 Fairf. 429, are applicable to the facts of this case." Looking at *Russell* v. *Richards,* we find the opinion, so far as relates to the question now in issue, equally short, but sufficient to show the ground upon which the conclusion rests; and it is, that the

"mill was built at the expense of Vance and Church, and by the permission of Vance, the father, who was the owner of the land;" and "the open and express disavowal by the father, of any interest in, or claim upon, the mill." No allusion is made to the fact that the contract for the sale of the land was oral, but it is put expressly upon the ground that the parties understood at the time, that the mill was to be and remain the personal property of the builders. If the same principle applies to the facts in *Pullen* v. *Bell*, it must be because the facts in the case were such as to lead to the same conclusion as to the intent of the parties in relation to the ownership of the house, and we think they do. There was in the latter case an agreement for the sale of the land, but as a part of that agreement, it was to be put in writing. This the seller refused or neglected to do. There was, then, a breach of the agreement on his part,— virtually an offer to surrender the contract, which the purchaser not only had a right to, but must of necessity accept. Further, the house was unfinished and not attached to the land. Thus the evidence seems sufficiently satisfactory that it was not in the contemplation of the parties that the house was to become a part of the real estate, nor does the law require such injustice to be done as to make it a part. The owner of the land had held out inducements for the building of the house, which, through his fault, had failed. It could not then be said consistently with his honesty, that he intended to avail himself of the improvements made. Thus neither of these cases nor any others to which our attention has been directed, are authorities for the plaintiff, or in any degree in conflict with the principles on which the defendant's claim rests.

Nor does the claim that Treat, or the plaintiff as tenant at will, had a right to remove these fixtures during the tenancy, have any better foundation. We have no occasion to contest the rule of law laid down in the argument upon this point, but it does not help the plaintiff. If Treat was a tenant, the plaintiff was not. If the fixture was made by Treat and he had a right to remove it, as tenant at will he had nothing which he could convey to the plaintiff. *Dingley* v. *Buffum*, 57 Maine, 381.

But there is no pretence that Treat made any assignment of his tenancy or of the fixture; but the claim is that at the

beginning it was put into the mill by, and has always remained the property of, the plaintiff. Not having been affixed by a tenant, the law of tenancy does not apply.

But if the plaintiff were in Treat's place he is in no better condition. In a certain sense Treat was a tenant at will. He was in by permission. He had no title to, or interest in, the land, except this possession, from which, under the provisions of law, he might be removed at the will of the owner. Still, he had no lease, verbal or otherwise. He went in under no promise, express or implied, to pay rent, but under a contract of purchase. If the conditions of that contract had been fulfilled, no obligation to pay rent would have resulted from his occupation. His liability to pay rent arises only from an implied promise resting upon his failure to comply with the terms of his contract. *Patterson* v. *Stoddard*, 47 Maine, 355; *Gould* v. *Thompson*, 4 Met. 224. It follows that while he was in possession under his contract of purchase,—that being in force either by payments of the price so far as it had become payable, or a waiver by the vendor of any failure of performance,—the relation of landlord and tenant did not exist between these parties. The mill having been built under this contract, was not built by a tenant, and the plaintiff, even if he had all of Treat's rights, cannot avail himself of the rights of a tenant making fixtures under his lease.

The principle applicable here is rather that which applies in the case of mortgager and mortgagee, in which it is well established that whatever improvements may be made, they go with the land.

Nor will the claim of estoppel avail the plaintiff. If the wheel had been removed with the knowledge and consent of Pierce, —of which there is no evidence,—that might have been entitled to some weight as testimony upon the question of title, but it lacks a necessary element to create an estoppel. It does not appear that the plaintiff parted with any right, or in any respect changed his condition as to property, in consequence of such consent.

As the plaintiff fails to show a title in himself, there must be

*Judgment for defendant.*

BARROWS, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.