### CAVIS *v.* BECKFORD.

As between the vendor and vendee of a mill, a steam boiler and looms, used in the mill as a part of it, and necessary for doing its work and carrying on its business, may be a part of it, though held in position only by their own weight.

TROVER, for a steam boiler, its fixtures, and two looms. Facts found by a referee. February 9, 1870, the defendant, owning a woollen mill and the machinery in it, situated in Bristol, conveyed the mill, by a warranty deed describing the land on which the mill stood, to Augustus and William H. Williams, for the sum of $7,000, and the latter, on the same day, reconveyed it to the defendant by warranty mortgage deed as security for the purchase-money. In April or May of the same year the purchasers took possession.

The mill, when sold, was warmed by stoves, and the heat for scouring and coloring purposes was obtained from a copper boiler

in the dye-house outside the mill. After taking possession, the purchasers sold the stoves and the copper boiler, and in their stead procured the large steam boiler in controversy. It was connected with pipes, and was used both for warming the mill and for scouring and coloring; and this arrangement was the only one for those purposes while the mill remained in their possession. The boiler was placed in the mill by cutting a hole in the floor; of about the size of the boiler, and, for the front end, building a brick support from the ground, above the level of the floor, and bricking about the fire-box, the rear end of the boiler being placed in an iron rest upon a split stone base fixed in the ground. The remainder of the space beneath the boiler was filled with earth up to the level of the floor. The boiler became a necessary part of the machinery of the mill during the occupation of the purchasers.

Some small frocking looms, being out of repair, and not such as the Williams brothers desired to use, were removed from the mill, with the consent of the defendant, to a storehouse on the premises, and in the following June the two looms in controversy were bought and placed in the mill in lieu of the discarded ones. The former were so large that they were taken apart in order to be placed in the mill, and (the floor of the mill being of boards only) timbers of about twelve by four inches were laid on the floor and the looms placed on the timbers. The looms weighed about 1,500 pounds each, and were attached to the floor by their own weight alone, no fastening connecting the timbers with the floor or the looms with the timbers. The looms were connected by belting with the main shaft in the mill, and became a part of the machinery of the mill, and were necessary for the purposes of the mill as then designed, and as used during the occupation of the Williams brothers.

January 31, 1871, the latter, being indebted to the plaintiff, gave him a chattel mortgage, duly recorded, of the property in controversy as security for the indebtedness.

March 15, 1871, the Williams brothers, having failed to pay any of the purchase-money (except six months' interest) due to the defendant, and having become further indebted to him, conveyed the mill property to the defendant by a quitclaim deed describing the property substantially as in the deed of purchase. It was understood between the parties that the defendant should not collect anything upon his mortgage note other than the property reconveyed, and that the mortgage and note should exist so far as to protect the quitclaim deed against intervening claims, but was ultimately to be delivered to the makers; and in pursuance of this understanding the note was delivered to them some three or four years before the time of the hearing. The defendant, upon receipt of the quitclaim deed, took possession of the mill, including the property in controversy, and he or parties holding under him have ever since been in possession.

*Fling & Chase*, for the plaintiff.

*Barnard & Barnard*, for the defendant.

DOE, C. J. As between the mortgagor and mortgagee of the mill, the boiler and looms were fixtures. *Mather* v. *Fraser*, 2 K. & J. 536; *Walmsley* v. *Milne*, 7 C. B. (N. S.) 115, 132; *Climie* v. *Wood*, L. R. 3 Ex. 257; *Winslow* v. *Ins. Co.*, 4 Met. 306; *Richardson* v. *Copeland*, 6 Gray 536; *McConnell* v. *Blood*, 123 Mass. 47; *Southbridge Bank* v. *Exeter Works*, 127 Mass. 542; *Voorhees* v. *McGinnis*, 48 N. Y. 278, 286; *Tifft* v. *Horton*, 53 N. Y. 380; *Quinby* v. *Manhattan Co.*, 24 N. J. Eq. 260; *Merritt* v. *Judd*, 14 Cal. 59; *Frankland* v. *Moulton*, 5 Wis. 1; *Parsons* v. *Copeland*, 38 Me. 537; *Symonds* v. *Harris*, 51 Me. 14; *Lapham* v. *Norton*, 71 Me. 83, 85; *Walker* v. *Sherman*, 20 Wend. 636; *Payne* v. *Bank*, 29 Conn. 415; *Harlan* v. *Harlan*, 15 Pa. St. 507; *Green* v. *Phillips*, 26 Grat. 752; *Latham* v. *Blakely*, 70 N. C. 368; *Deal* v. *Palmer*, 72 N. C. 582; *Boyd* v. *Shorrock*, L. R. 5 Eq. 72; *Longbottom* v. *Berry*, L. R. 5 Q. B. 123; *Despatch Line* v. *Bellamy M. Co.*, 12 N. H. 205, 232; *Baker* v. *Davis*, 19 N. H. 325, 334; *Lathrop* v. *Blake*, 23 N. H. 46, 64; *Tuttle* v. *Robinson*, 33 N. H. 104, 119; *Wadleigh* v. *Janvrin*, 41 N. H. 503; *Burnside* v. *Twitchell*, 43 N. H. 390, 393; *Cochran* v. *Flint*, 57 N. H. 514; *Kent* v. *Brown*, 59 N. H. 236.

*Judgment for the defendant.*

ALLEN and SMITH, JJ., did not sit: the others concurred.