Gunderson vs. Swarthout.

GUNDERSON, Receiver, Respondent, vs. SWARTHOUT, Appellant.

*September 11 — October 20, 1899.*

*Fixtures: Electric light plant: Mortgages.*

A dynamo, exciter, and belts were placed in the building of an electric light company under an agreement to pay rent therefor, with an option to apply the rent on the purchase price of a larger dy-

namo or to purchase the one so put in and apply the rent thereon. At the expiration of the option the company purchased the machinery so put in, intending, however, to purchase a larger dynamo thereafter. The dynamo weighed three and one-half tons, and was fastened to timbers in the building by means of lag screws, and was moved from time to time. The other machinery was fastened to timbers in substantially the same way. The outfit was of more than sufficient capacity to supply all the light the company had contracted to furnish, and was in operation at the time of a foreclosure sale under a mortgage given to procure funds to construct the plant. *Held* that, as between the purchaser at such sale and the original vendor of the machinery, the machines had become fixtures.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Thomas Morris* and *Losey & Woodward*, and oral argument by *G. M. Woodward.*

*Ray S. Reid,* for the respondent.

CASSODAY, C. J. This is an action commenced February 8, 1898, to recover a certain electrical machine known as a "dynamo," and a certain other electrical machine known as an "exciter," together with certain belts used in operating the same, or the sum of $1,600, the value thereof, in case a delivery cannot be had, together with damages and costs. Issue being joined and trial had, at the close thereof the jury returned a verdict wherein they found for the plaintiff, and that the articles of property mentioned were not fixtures, and that the value thereof was $1,500, and thereupon, and in pursuance of the order of the court, judgment was entered in favor of the plaintiff and against the defendant for $1,500 damages and $74.89 costs. From that judgment the defendant brings this appeal.

It appears from the record and is undisputed that December 27, 1893, the McMillan Mill & Power Company was incorporated; that October 22, 1894, the lands in question

and described were deeded to that company and the deed was recorded; that November 14, 1894, the company gave a mortgage upon these lands to one A. S. Swarthout, father of the defendant, for $7,000, with which to construct the plant in question, and which mortgage was duly recorded; that the plant was never used for any other purpose than manufacturing and furnishing electric light; that April 2, 1895, the company procured a franchise from West Salem to put up poles and wires and furnish light in that village; that September 3, 1895, that company accepted a proposition made by the Stanley Electric Manufacturing Company to rent the dynamo, exciter, and belts in question, and allow the rental to apply on the purchase price of a larger machine, which the company had the privilege of ordering within four months from the day of shipment, and to be delivered on or before August 1, 1896, or to purchase and apply such rental on the machine in question,— the rental to begin October 1, 1895; that thereupon the dynamo, exciter, and belts were delivered to the company, and by the company placed upon the premises in question and used in operating the company's electric plant; that in January, 1896, and in pursuance of the contract for purchase and lease so made, the company purchased the dynamo, exciter, and belts in question and then in use in its electric plant mentioned; that May 7, 1897, such proceedings were had that the plaintiff was appointed receiver of all and singular of the property and assets of the McMillan Mill & Power Company; that the mortgagee, A. S. Swarthout, died testate in March, 1896; that his will was duly admitted to probate; that such mortgage was foreclosed, and the property sold by the sheriff on the judgment of foreclosure and sale to the defendant, and duly conveyed to him by the sheriff's deed, dated October 7, 1897, and recorded.

At the commencement of the trial of this action the parties stipulated to the giving of the mortgage, and the fore-

closure and sale of the premises upon which the machines in question were situated, and that the sheriff's deed upon such sale vested in the defendant all the rights which would follow to the grantee on such foreclosure and sale; that the receiver was appointed as stated; that the suit might proceed without the formality of a writ of replevin going into the hands of any officer or any officer taking charge thereof; that no replevin bond should be required, and no actual service of the writ should be had; and that all formalities be dispensed with.

The evidence is to the effect that the dynamo weighed three and one-half tons; that the lower floor of the mill building was solid rock; that on this rock floor a pier about five feet square and sixteen inches high was built of rock and cement; that the top of it was covered with a bed of cement, and on and in this bed of cement was laid a frame of timbers about three and one-half feet square; that such cement as was left was mixed up with broken stone and thrown inside the wooden frame; that the dynamo was then set on the top of the wooden frame, and was fastened to it by lag screws going down into the timbers; that it remained and was operated in such way for about six months, when a second foundation was built for it, like the first one, about eight or ten feet away from the first, on the same floor, and the dynamo was moved to and placed on this second foundation in the same manner as it had been on the first, and was about on a level with the power shaft from the mill wheel; that the exciter was a necessary part of the dynamo, and was at all times firmly fastened by screws to the building; that the switch board — without which the dynamo could not be used — was also at all times firmly attached to the building; that September, 1896, the dynamo was removed, and lifted up to the floor above, about fifteen feet higher than the first floor, and some distance further away from the power shaft, so that the belt from the power shaft ran

upwards to the dynamo at an angle of about twenty degrees; that it rested on timbers spiked to the floor, and lag screws held the dynamo on these timbers; that it was heavy enough to remain in this position by its own weight without such fastenings.

The only question presented is whether the dynamo, exciter, and belts constituted fixtures to the real estate. It is true, as contended by the plaintiff's counsel, that at the time the company purchased the machines it contemplated buying a larger dynamo, and took the one in question so as not to lose its franchise at West Salem. But it never did purchase any other, and the dynamo in question was of ninety horse power, whereas sixty horse power would have supplied all the lights the company ever agreed to furnish. The machines were certainly adapted to the use to which they had been put during the two years immediately prior to the time when the defendant received the sheriff's deed. It was held in this state at an early day that where an equitable mortgagor, with the consent of the owner of personal property, annexed the same to the freehold, the fixture could not be removed as against such prior mortgagee. *Franklin v. Moulton*, 5 Wis. 1. In that case the owner of a steam engine sold the same to the mortgagor, and assisted in annexing the same to the realty, reserving a chattel mortgage on the same for a part of the purchase money; and it was held that the chattel mortgage was inoperative as against such prior equitable mortgagee. The rulings in that case have received frequent sanction. *Cooper v. Cleghorn*, 50 Wis. 121; *Taylor v. Collins*, 51 Wis. 127; *Kendall Mfg. Co. v. Rundle*, 78 Wis. 150; *Homestead L. Co. v. Becker*, 96 Wis. 210.

Two of these cases have declared as the test for determining whether articles of machinery are fixtures: "(1) Actual physical annexation to the realty; (2) application or adaptation to the use or purpose to which the realty is devoted; (3) an intention on the part of the person making the an-

nexation to make a permanent accession to the freehold." The same criterion has been maintained in other states. *McRea v. Central Nat. Bank*, 66 N. Y. 489. In the case at bar these tests all seem to be complied with. Certainly the machines were all adapted to the purpose to which the realty was devoted.

In determining between mortgagor and mortgagee whether erections are fixtures and hence a part of the realty, or personal property, the same rules prevail which are applicable between grantor and grantee. *Snedeker v. Warring*, 12 N. Y. 170; *McFadden v. Allen*, 134 N. Y. 489. Thus, it has been held that a kettle or boiler in a brewhouse is a part of the freehold, and a fixture. *Gray v. Holdship*, 17 Serg. & R. 413; *S. C.* 17 Am. Dec. 680. So hop poles which have been used in the cultivation of hops, although piled upon the premises with the intention of being used again the next season, have been held to be a part of the realty and fixtures. *Bishop v. Bishop*, 11 N. Y. 123; *S. C.* 62 Am. Dec. 68. The same rule prevails as to rails and fencing material deposited along the line, and ready to be put in place. So a statue erected as an ornament to the grounds has been held to be a part of the realty, although it was not fastened to the base on which it rested, and could be removed without fracture. *Snedeker v. Warring*, 12 N. Y. 170. The rule seems to be less stringent in Massachusetts, but even there large and heavy machinery procured for the use of a mill has been held to be a part of the realty. *Hopewell Mills v. Taunton Sav. Bank*, 150 Mass. 519. Of course, in all such cases the purpose of the annexation is a very important consideration. *Homestead L. Co. v. Becker*, 96 Wis. 210. Where the machinery attached is adapted to the purpose to which the realty is devoted, and is for the permanent use and improvement of the freehold, it is a fixture and a part of the realty; but where it is attached for a mere temporary use, with the present intention of removal,

it continues to be personal property. *Homestead L. Co. v. Becker*, 96 Wis. 210; *McRea v. Central Nat. Bank*, 66 N. Y. 489; *McFadden v. Allen*, 134 N. Y. 489. In this last case it was held, in effect, that if the mortgagor, or one claiming under him, "intended to assert title to the fixtures, he was bound to do so in the foreclosure suit, and was estopped by his default therein from making such a claim as against the purchaser or his grantee."

The mere fact that at the time of purchasing the machines in question the company intended to purchase a larger dynamo does not imply that it was not adapted to the purpose for which the realty was devoted, nor that it was not its intention to continue its use until supplanted by a more powerful one; in other words, there was no purpose of running the plant without a dynamo. On the contrary, the manifest purpose was to continue the use of a dynamo permanently, and keep the one in question until the company should be able to get a better one. Such time never arrived.

We must hold, upon the undisputed evidence, that the machines in question became fixtures, and the title to the same passed to the defendant as purchaser at the foreclosure sale.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.