State ex rel. Gisholt Machine Company, Respondent, vs. Norsman, Clerk, etc., Appellant.
Same, Appellant, vs. Same, Respondent.

*October 11, 1918—February 4, 1919.*

*Taxation: Machinery as fixtures: Intent: Evidence: Valuation of land and improvements: Methods.*

1. Machinery adapted to the purposes of a manufacturing plant becomes, when installed therein and connected with the building by wires or belts, a part of the freehold, and the land, buildings, and machinery so attached constitute an entity and pass by deed, mortgage, or other conveyance of the land.
2. The machinery in a machine-tool factory ranged from very-small machines to those weighing thirty to forty thousand pounds, all being adapted to the purposes of the plant.   For the most part they were held in position by their own weight and were neither bolted nor screwed to the floor, but were all attached either to electric motors by wires or to the steam power plant by belts and pulleys.   Any part of the solid concrete floors was of sufficient strength to support the weight of the heaviest machine; and the machines were occasionally moved from place to place in the factory to suit the varying convenience and necessities of the plant.   *Held,* that they were fixtures and were properly assessed for taxation as part of the realty, under sec. 1035, Stats.
3. Although the question of whether property constitutes fixtures is largely one of intent, yet where the property is adapted to the use to which the realty is devoted its use in such manner is such strong evidence of intent to make it a part of the free-

State ex rel. Gisholt M. Co. v. Norsman, 168 Wis. 442.

hold as not to be overcome by the fact that it was carried on the books of the owner as movable equipment.

4. In valuing real property for taxation the assessor started several blocks from the manufacturing plant in question, towards the business section of the city, placed a front-foot value on the lots at this point, and then reduced the front-foot valuation by blocks as he proceeded toward the plant. He also considered the fact that certain blocks had sidetrack facilities, and gave due regard to the actual value of land as reflected by sales in the vicinity, and to the sworn testimony of presumably competent persons on other occasions as to real-estate values in that part of the city. *Held,* that the valuation so arrived at was not governed by an arbitrary rule and was in compliance with the requirement of sec. 1052, Stats., that "real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale."

5. Under sec. 1052, Stats., the assessor should value separately the land and the buildings and arrive at the total valuation by adding the two items together. He should not find first the value of the land and improvements as a whole and then apportion such total value between land and improvements.

6. In valuing factory buildings and machinery constituting fixtures therein, the original cost less depreciation was a sufficient basis for the formation of an honest judgment and, no better method being suggested, and no reason appearing why such original cost should be further discounted to arrive at the actual cash value or the value that might reasonably be expected to be obtained for the property at private sale, an assessment on that basis was a compliance with sec. 1052, Stats.

APPEALS from a judgment of the circuit court for Dane county: JAMES WICKHAM, Judge. *Reversed on defendant's appeal; affirmed on that of plaintiff.*

*Certiorari* proceedings to review the action of the board of review of the city of Madison in affirming the assessment made of relator's property by the assessor. The circuit court held that certain property assessed as real estate should have been assessed as personal property, in which particular the action of the board of review was reversed and in all other respects affirmed. Both parties appeal.

For the relator there was a brief by *Olin, Butler, Stebbins & Stroud* of Madison, and oral argument by *H. L. Butler* and *R. M. Stroud.*

*William Ryan,* city attorney, for the defendant.

The following opinion was filed November 6, 1918:

OWEN, J.   The *Gisholt Machine Company* is the proprietor of a machine-tool manufactory located in the city of Madison. Its plant consists of several factory buildings of standard design and covers six or seven city blocks. It is equipped with various kinds and types of machinery adapted for the purpose of the manufactory. A part of this machinery which the assessor valued at the sum of $301,173 was assessed by him as real estate or land improvements. The relator contends, and the circuit court held, that this machinery is personal property and should have been so assessed. This presents the main question for consideration. It is important, because if the property be assessed as personalty the tax paid thereon operates as an offset to the income tax paid by the relator.

The machinery in question ranged from very small machines to machines weighing thirty or forty thousand pounds. For the most part they were held in position by their own weight and were neither bolted nor screwed to the floor. All, however, were attached either to electric motors by electric wires or to the steam power plant by belts and pulleys. The floors of the buildings were of solid concrete construction and any part thereof was of sufficient strength to support the weight of the heaviest machine. The machines are occasionally moved from place to place in the factory to suit the varying convenience and necessities of the plant. For only one machine in the plant, valued at a few thousand dollars, was it necessary to build a pit, and even that machine could be moved in the same manner as the others, no structural change being required beyond the filling of the pit. All of this machinery was adapted to the purposes of the manufactory.

Sec. 1035, Stats., provides that "the terms 'real property,' 'real estate' and 'land,' when used in this title, shall include not only the land itself, but all buildings, fixtures, improvements, rights and privileges appertaining thereto." The assessor considered this machinery to be fixtures and assessed it as a part of the land. It appears that a part of this factory and a part of the machinery here in controversy were located on land not owned by the relator, but held by it under lease from the owner. The terms of the lease, however, are not disclosed by the record, and it was frankly stated upon the argument that no importance was attached to this fact. We therefore lay out of the case any consideration of the question as affected by the relation of landlord and tenant, and nothing said herein is to be construed as affecting or modifying the decisions of this court in dealing with the question of fixtures arising between landlord and tenant. The question is here treated as though the machinery were located on land owned entirely by the relator. So considered, the question is ruled adversely to the contentions of relator by a long line of decisions in this state. *Frankland v. Moulton,* 5 Wis. 1; *Kimball v. Darling,* 32 Wis. 675; *Taylor v. Collins,* 51 Wis. 123, 8 N. W. 22; *Kendall M. Co. v. Rundle,* 78 Wis. 150, 47 N. W. 364; *Homestead L. Co. v. Becker,* 96 Wis. 206, 71 N. W. 117; *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 85 N. W. 698. The effect of these decisions is that when machinery adapted to the purposes of a manufacturing plant is installed therein and connected with the building by wires or belts, such machinery becomes a part of the freehold, and the land, buildings, and machinery so attached constitute an entity and pass by deed, mortgage, or other conveyance of the land. This doctrine is so firmly written into the decisions of this court as to have become a rule of property in this state, which it is our duty to respect and protect.

An attempt to distinguish this case from the prior de-
cisions of this court upon that question would introduce re-
finements which would result in uncertainty and confusion.
Neither business nor general interests would be promoted
by such an attempt.   A principle of law in the nature of a
rule of property once established should be adhered to.   If
the rule be deemed wrong it may be changed by the legis-
lature, but property interests should not be jeopardized by
judicial vacillation.   Because we consider this case to fall
within the scope of our previous decisions it is unnecessary
to indulge in a discussion of the underlying principles by
which the question of whether certain property is to be re-
garded as fixtures is tested.   It is proper to say, however,
in response to relator's contention that this machinery should
be considered personal property because of the fact that it
was carried on the books of the company under the head of
movable equipment, indicating an intention on the part of
the company to preserve its character as personal property,
that the act of the company in installing this machinery in
its manufacturing plant, connecting it up by wires and belts
to the building, constitutes greater, if indeed it should not
be considered conclusive, evidence of its intent in the prem-
ises.   It is true that the question of whether property con-
stitutes fixtures is largely one of intent.   But where property
is adapted to the use to which the realty is devoted, the use
thereof in such manner furnishes such strong evidence of
intent to make it a part of the freehold as not to be over-
come by bookkeeping practices.   *Hannon v. Kelly,* 156 Wis.
509, 146 N. W. 512, and cases cited.

Relator contends that the assessor adopted arbitrary and,
therefore, illegal methods in valuing its real estate.   It ap-
pears that the assessor started several blocks away from the
plant, toward the Capitol Square.   He placed a front-foot
value on the lots at this point and then reduced the front-
foot valuation by blocks ($5 per block) as he proceeded
from this block, away from the Capitol Square.   It is argued

that this method of assessment is condemned by this court in *Hersey v. Barron Co.* 37 Wis. 75. We adhere to the rule therein expressed, and if it appeared here that the assessment of relator's real estate was made pursuant to arbitrary rules such as were followed by the assessor in that case it would meet with the same condemnation. The record does not impress us, however, with the thought that the assessor in assessing relator's real estate, or real estate in that vicinity, was governed by any arbitrary rule. It is well known that in cities real-estate values decrease in proportion to the growing distance from the center or business part of the city. The assessor in this case gave due consideration to that fact and, in giving effect to that element of value, decreased the front-foot value of lots fronting on Washington avenue by $5 per foot in each succeeding block. There is nothing in the record to indicate that this was either unreasonable or unfair. As showing that the assessor made a rather comprehensive and intelligent survey of the entire situation in arriving at his values of real estate, we quote from his testimony. He said:

"In placing the valuation of the land on these particular blocks, I believe you would have to consider the entire section of the city between Blount street and the river and Washington avenue and Williamson street. I want to point out that we assessed land in block 132 at $65 and have it scaled down to $40 in 215 and 216. I want also to point out that we have a number of actual sales which I believe will hold that valuation. For example, we have these sales in block 171, which I spoke of. Although selling at $75 and $100 a front foot we have assessed at $55 per front foot because we thought they were too high. Here is the Gisholt block, next to it, at $50 per front foot. I want to point out that although Mr. Swensen had a sidetrack running through this block the long way of the block, that 187 also has sidetrack facilities, the same as 171. We also had this evidence of values in the block this way: There is an option on lots 5 and 6 at $60 per front foot, although we have assessed that block at $55 per front foot. There was recently a sale

in block 144, the Garry property, at $76 per front foot. We have also had the sale of lots 10 and 11 in block 145 at $9,000, $4,500 a lot. We have also had a Cooley sale here at $75 for two lots. We also have the Case sale, two lots and a fraction at $15,000, plus the street assessment, which brought it up to $17,000. This property is not worth more than the Gisholt lots are, but I do want to point out that a glance at this map will show that we have this property up here around Blount street at about what it is sold for, and we have gradually scaled the value down to the river. I would also ask the board to consider the sworn testimony of Mr. Swensen, Mr. Cross, and Mr. Riley in the rate case hearing, in which he testifies as to the valuation of a lot of these lots in that section, and I want to point out that our assessment is about 65 per cent. of what he testified that land is worth."

It thus appears that the assessor took into consideration many elements of value, even the fact that certain blocks had sidetrack facilities, and that he gave due regard to the actual value of lands as reflected by actual sales made in the vicinity, as well as to sworn testimony given presumably by competent persons on other occasions concerning real-estate values in that territory, all of which negatives the idea that his assessment was arbitrary or governed by any rule-of-thumb method. The record is convincing that the assessor keenly appreciated his responsibilities and legal duties, and that the value placed by him upon the real estate of relator reflects his honest, mature, and intelligent judgment upon that question and shows obedience to the commands of the statute, sec. 1052, which provides that "Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale."

Fault is also found with the assessment because the assessor valued the land independent of the buildings, and then valued the buildings independent of the land, and arrived at a total valuation by adding the two items together. It is

argued that, in order to comply with the statute, the assessor should have adopted the inverse method and should have first found the value of the land and improvements as a whole and then apportioned the total so found to real estate and to improvements. We do not so understand the statute. Sec. 1052 requires the assessor to enter in one column "the value of the land, exclusive of the buildings thereon; in a separate column under the head 'Improvements,' he shall enter the value of such buildings, together with machinery and fixtures therein, if any, not separately assessable, as personal property; and in the third column he shall enter the value of both land and improvements." Compliance with this provision requires the assessor to first assess the real property irrespective of any buildings or improvements thereon. Two lots lying side by side, one having improvements thereon and the other with no improvements, should be valued the same, if the improvement is the only element of difference in the value. Having arrived at the value of the lot in this manner, the improvement should then be valued and set down in another column. This was the manner in which the assessor proceeded in valuing relator's property, and we hold that it was in strict compliance with the statute.

In arriving at the value of the buildings and machinery which he assessed as fixtures the assessor gave due regard to the cost thereof to the relator less the annual depreciation which had been charged off on the books of the company, the assessor satisfying himself that such depreciation had not been excessive. It is complained that this method of assessment does not satisfy the demands of the statute, which requires the property to be assessed "at the full value which could ordinarily be obtained therefor at private sale." It is argued that the market value of the land itself without any buildings thereon plus the original cost of the buildings less depreciation does not fix the value which could ordinarily be obtained for the plant at private sale. This argu-

ment, however, is not coupled with any suggestion of a better method for arriving at the result. It is matter of common knowledge that large manufacturing establishments such as this are not subject to frequent transfers so that the market value could be established in such way. The president of the concern, testifying, said: "I cannot testify as to what our plant is worth as a unit and as a going concern, because the purchases of anything of that kind are few and far between." Under such circumstances we can think of no better method than the one adopted by the assessor for arriving at a fair valuation of the property, which was certainly a sufficient basis for the formation of an honest judgment. It is recognized that the question of whether the business is a paying one might under some circumstances be a material consideration in valuing the improvements. The evidence here, however, is that this business was started in one corner of the Fuller & Johnson manufacturing plant, at which time it amounted to little or nothing. In 1890 the company built a small wooden structure which was its first building. It has grown until now its physical property is assessed at over $2,000,000. There is some testimony that since the breaking out of the war the profits have been abnormal, and that for a few years prior thereto there were no profits. But it was also said that this kind of a business has its ups and downs. There are good years and poor years. The history of the concern, during the period of its existence, shows that on the whole it is a very profitable business. At least there is no reason indicated by any of the facts and circumstances in this case why the original cost of the physical property less depreciation should be further discounted to arrive at its actual cash value or the value that might reasonably be expected to be obtained therefor at private sale. The record fully justifies the action of the assessor as well as that of the board of review in confirming his assessment. The action of the board of review should have been affirmed.

St. Paul F. & M. Ins. Co. v. Laubenstein, 168 Wis. 451.

*By the Court.*—The judgment of the circuit court is reversed on defendant's appeal and affirmed on plaintiff's appeal, and remanded with instructions to enter judgment affirming the order of the board of review.

A motion for a rehearing was denied, with $25 costs, on February 4, 1919.