McCORKLE and others, Appellants, vs. ROBBINS and another, Respondents.

*April 30—June 2, 1936.*

*O. D. Black,* attorney, and *W. S. McCorkle* of counsel, both of Richland Center, for the appellants.

*L. H. Bancroft* of Richland Center, for the respondents.

FRITZ, J.   Plaintiffs assign as error the trial court's findings, conclusions, and judgment that a carbonator, cooling machine, bottling machine, bottle-washing machine, and syrup mixer used by the defendant, William Z. Robbins, in the manufacture of soft drinks are personal property and not fixtures which are a part of the real property subject to the lien of plaintiffs' mortgages, and as such subject to plaintiffs' judgment of foreclosure and sale.

The following facts appear without any material dispute: When, in September, 1915, William Z. Robbins purchased the real property described in the mortgages, there was on it a two-story dwelling; and since then he has continuously used the second floor thereof as his place of residence. Upon taking possession, he converted the first floor into a soft-drink manufacturing and bottling plant by taking out some partitions; installing, in place of two hundred fifty square feet of wooden flooring which he removed, a cement floor supported by special posts and oak joists; and placing on that cement floor all of the machines in dispute excepting the syrup mixer. With that exception, none of those machines were fastened to the floor or walls by bolts or screws, but were kept in place by their weight. They were connected to pipes supplying water obtained by pipes connecting with the municipal water plant and were also connected by wiring to electric motors operated by current brought into the building by wires connected with the distribution system of the local public service plant. The bottle-washing machine was also connected by drain pipes with the municipal sewer system,

and by pipes to a hot-water boiler in the basement, and a laundry stove used for heating the water. The syrup mixer was fastened to a wall by bolts and screws. The years of purchase, cost, and weight of the machines are approximately as follows:

| Machine. | Year Bought. | Cost. | Weight. |
|---|---|---|---|
| Carbonator .............1915 | | $  325.00 | 700 pounds |
| Cooling Unit .............1930 | | 600.00 | 700 pounds |
| Bottling Machine .........1927 | | 3,000.00 | 3,000 pounds |
| Syrup Mixer .............1920 | | 25.00 | Not stated |
| Washing Machine.........1925 | | 2,350.00 | 2,500 pounds |
| | | $6,300.00 | 6,900 pounds |

Some replaced others which William Z. Robbins had installed originally. All were installed and used by him with the intention of continuing to operate that plant in manufacturing soft drinks. As his business grew, he built, as additions to the first floor of the building, two large storage rooms for housing bottles, supplies, and stock required and used in the business; and also two large garages to house, in addition to his automobile, two trucks used in delivering the manufactured products to his customers.

The mortgages under foreclosure were executed in favor of A. H. Krouskop by William Z. Robbins and Blanche O. Robbins (who was then his wife), on October 13, 1923, and March 28, 1928, respectively, to secure loans made to them by Krouskop. $4,500 and interest remained unpaid on those loans. Neither of the mortgages specified the machines in describing the property conveyed, but each did also expressly convey the appurtenances belonging to the realty. During the life of the mortgages, the machines had been assessed and taxed, continuously, as part of the building and real property, without any separate assessment or levy of taxes on the machines as personal property; and two years' taxes

thus assessed and levied were delinquent at the time of the foreclosure. The plaintiff McCorkle testified that, ever since the first mortgage was executed, the fire insurance was written as one risk on the real estate, machinery, and equipment under policies issued in the name of William Z. Robbins, with the loss, if any, payable to the mortgagee or his assigns. But Robbins testified that he was not consulted as to the form of the policy nor as to separating the real and personal property; and that he had carried separate insurance on the personal property until he failed to pay the premiums three years prior to the trial.

On October 2, 1932, the defendants gave a chattel mortgage on the machines in question, and on other personal property, to Albert M. Kraft to secure the purchase price for an automobile, on which $343 remained unpaid; and in October, 1934, William Z. Robbins gave a chattel mortgage on the same property to Blanche O. Robbins to secure $2,000, payable to her in monthly instalments under a judgment for divorce.

The undisputed facts stated above conclusively establish that, commencing in 1915, William Z. Robbins, with the intention of operating a plant for the manufacture of soft drinks, converted the first story of the building in question into such a plant by installing and thereafter continuing to use therein the machines in question, which, during all of that period, were necessary, indispensable, and integral parts of that plant, and clearly adapted to the use and purpose to which he devoted that first story and the major portion of the realty in operating that plant. Consequently, those machines, as between the defendants, as mortgagors, and Krouskop as mortgagee (and the plaintiffs as his successors in interest), became fixtures subject to the liens of plaintiffs' mortgages under the well-established rule applied in *Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439; *State*

*ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429; *Hannon v. Kelly,* 156 Wis. 509, 146 N. W. 512; *Gunderson v. Swarthout,* 104 Wis. 186, 80 N. W. 465. The manner in which Robbins converted a substantial part of that real property into such a plant by making such material and permanent alterations therein, and then installing and using those machines adapted and essential to the conduct of that plant, clearly brought them within the rule that, "when machinery adapted to the purposes of a manufacturing plant is installed therein and connected with the building by wires or belts, such machinery becomes a part of the freehold, and the land, buildings, and machinery so attached constitute an entity and pass by deed, mortgage, or other conveyance of the land." *State ex rel. Gisholt M. Co. v. Norsman, supra,* p. 445. That doctrine, as the court then said, "is so firmly written into the decisions of this court as to have become a rule of property in this state, which it is our duty to respect and protect." Although it is true that, in applying that doctrine, the question of whether such machines constitute fixtures is largely one of intent, that intent may be considered established conclusively by the fact that the machines in question were clearly adapted to, and were in fact put by the owner of the realty and the machines to, the use to which he devoted the realty and the installed machines as an entirety. As the court said in *Hannon v. Kelly, supra,* p. 515: ". . . The circumstance of being an important feature of an entirety for the use to which the realty is devoted, is often of much, and sometimes of conclusive importance on the question of intention. . . ." So, in following that decision, this court said in *State ex rel. Gisholt M. Co. v. Norsman, supra,* p. 446:

". . . But where property is adapted to the use to which the realty is devoted, the use thereof in such manner furnishes such strong evidence of intent to make it a part of the

freehold as not to be overcome by bookkeeping practices;" and said, in *Thomsen v. Cullen, supra,* p. 603:

". . . It is considered that what makes a fixture attached by a belt or wire or pipe a part of the realty is the use to which it is put rather than the mere physical attachment. If it is a necessary integral part of the plant, as between mortgagor and mortgagee it is considered realty. . . ."

It follows that the machines in question passed as fixtures with the realty under plaintiffs' mortgages thereon. Although such annexation as fixtures did not occur as to most of the machines, until after the date of the first mortgage, the rule applicable in determining what has become part of the realty under such circumstances is the same as when the annexation was made prior to the giving of a mortgage or conveyance. *Frankland v. Moulton,* 5 Wis. 1, 5; *Smith v. Waggoner,* 50 Wis. 155, 161, 6 N. W. 568; *Homestead Land Co. v. Becker,* 96 Wis. 206, 212, 213, 71 N. W. 117; *Gunderson v. Swarthout,* 104 Wis. 186, 192, 80 N. W. 465; *Fuller-Warren Co. v. Harter,* 110 Wis. 80, 93, 85 N. W. 698.

Consequently, the court erred in adjudging that the machines in question were personal property belonging to William Z. Robbins and subject to the chattel mortgages given to Albert M. Kraft and Blanche O. Robbins, respectively; and that those machines are not subject to the judgment of foreclosure and sale as part of the real property subject to plaintiffs' mortgages. Plaintiffs are entitled to a modification of the provisions to that effect in the judgment by an adjudication, in lieu thereof, that those machines are fixtures and subject as such to plaintiffs' mortgages on the realty and the judgment of foreclosure and sale based thereon.

*By the Court.*—Judgment modified as directed in the opinion, with costs to appellants.