LEISLE, Appellant, vs. WELFARE BUILDING & LOAN
ASSOCIATION, Respondent.

*September 13—October 10, 1939.*

*Jack Sattell* of Milwaukee, for the appellant.

For the respondent there was a brief by *Ernst J. von Briesen* and *Ralph von Briesen,* both of Milwaukee, and oral argument by *Ernst J. von Briesen.*

NELSON, J.    The evidence adduced at the trial is rather limited considering the nature of the controversy.   The following facts, however, seem to be without dispute: On November 1, 1928, one Louis B. Shapiro applied in writing to the defendant for a mortgage loan of $25,000, using one of the defendant's application blanks.   The real estate was not specifically described.   In answer to the question: "Is there a building on the lot?" the applicant stated: "Will be."

In answer to the question: "Number of rooms?" the applicant stated: "8—4 R Apts." In answer to the question: "Garage on lot?" the applicant answered: "Yes, will be." In answer to the question: "Give detailed statement as near as possible regarding any new buildings or alterations you intend to make," the applicant answered: "Frigid air." In answer to the question: "Who now holds deed of property?" the applicant answered: "L. B. Shapiro." On February 18, 1929, Rose Shapiro (wife of Louis B. Shapiro) executed and delivered to the defendant a mortgage for $25,000, whereby she mortgaged certain lots and parts of lots, "together with the privileges, hereditaments and appurtenances thereunto belonging, and all the rents, profits and income which shall arise or be had therefrom." In the application, the value of the building (doubtless when completed) was stated to be $34,000. It was stipulated that the records in the office of the register of deeds of Milwaukee county revealed that the title to the property at the time the application was made was in the Le Rose Realty Company; that said company conveyed the premises to Rose Shapiro on February 18, 1929; that thereafter on March 4, 1931, Le Rose Realty Company conveyed the premises to Rose Investment Company; that Rose Investment Company conveyed the premises to L. Goldberg on July 10, 1931, and that L. Goldberg conveyed the premises to the plaintiff on July 29, 1931. The stipulation shows a break in the recorded chain of title, no deed from Rose Shapiro to Le Rose Realty Company being of record. The eight-apartment building was completed and the several apartments leased to tenants. There were installed in each of the four-room apartments a four-burner gas stove, a refrigerator, and a rollaway bed. The gas stoves were connected in the ordinary and usual manner. The iceboxes were installed in the several kitchens, and were connected by copper pipes which ran to a refrigerating plant or unit in the basement from which refrigeration fluids were pumped up into the iceboxes

in the several apartments. The gas stoves could be easily disconnected from the service pipes running to them. The iceboxes could be easily shut off, but to disconnect them it would be necessary to stop the entire system, pump out the liquid that was in the units, and then disconnect them. The rollaway beds were not in any manner attached to the realty. However, in each apartment a closet had been constructed for the sole purpose of receiving a rollaway bed when not in use. A bill of sale signed by L. B. Shapiro running to the plaintiff was received in evidence. It purported to evidence a sale of eight gas stoves, eight iceboxes, electric refrigerating system, eight rollaway beds, all hall carpets, and screens located in the apartment building mentioned, and is dated July 10, 1931. Foreclosure proceedings were commenced (the date of which does not appear), and a receiver was appointed on February 1, 1932. Judgment of foreclosure and sale was entered, and the premises sold without any question having been raised in that action as to the properties now in controversy. The apartments were leased unfurnished except as to the gas stoves, the iceboxes, and the rollaway beds. It appears from the testimony that such appliances or equipment are required to be in such apartments in order to rent them.

The circuit court based its decision upon two grounds: (1) The plaintiff wholly failed to prove that L. B. Shapiro, at the time he executed and delivered the bill of sale mentioned, had any title whatsoever to the properties in question; (2) the properties were fixtures which became a part of the real estate and were subject to the lien of the defendant's mortgage.

Assuming the properties to be personalty, we deem it unnecessary to determine whether the plaintiff made out a *prima facie* case of ownership thereof so as to bring an action for conversion. We prefer to base our decision upon the ground that under all of the circumstances the properties in question,

when placed in the apartment building by the owner and mortgagor, became fixtures and subject to the lien of the defendant's mortgage, and passed with the real estate upon the foreclosure sale.

There is much confusion in the law relating to fixtures and a great contrariety in the holdings of the courts. That confusion has been often adverted to. 26 C. J. p. 652; *Thomsen v. Cullen,* 196 Wis. 581, 599, 219 N. W. 439. In determining whether personal property has become a fixture, this court has consistently adhered to the following rules and tests, as recently pointed out in *Standard Oil Co. v. La Crosse S. A. Service,* 217 Wis. 237, 241, 258 N. W. 791:

"(1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold."

As pointed out in that case, it has often been said by this court that the matter of physical annexation of the article to the freehold is relatively unimportant. Controversies relating to fixtures principally arise in situations between, (1) vendor and vendee; (2) mortgagor and mortgagee; (3) landlord and tenant; (4) owner of life estate and remainderman; (5) seller under conditional sales contract as against mortgagee and subsequent vendees and prior mortgagee; and (6) with reference to taxation. *Thomsen v. Cullen, supra.* As stated in the opinion in that case, a liberal rule in favor of mortgagees is generally applied in controversies arising between mortgagor and mortgagee. Applying these principles to the present facts we are of the view that the circuit court was right in concluding that the properties here in question, as between mortgagor and mortgagee, were fixtures. As to the iceboxes, connected as they were to the refrigerating unit in the basement, there can be little question. The application for the loan, which specifically mentioned "Frigid air," lends support to this view. The iceboxes were parts of a complete

unit, were physically annexed to the real estate, adapted to the use or purpose to which the realty was devoted and the intent of the owner of the premises to make the iceboxes a permanent, rather than a temporary, accession to the freehold, is a conclusion almost impelled.

As to the gas stoves, the same reasoning must be applied resulting in the same conclusion. While a gas stove in a private residence ordinarily would not be considered a fixture which would pass to a vendee or be subject to the lien of a mortgage upon such residence, a different situation exists in the case of an apartment building erected and equipped for the sole purpose of leasing the apartments therein. In *Peninsular Stove Co. v. Young*, 247 Mich. 580, 582, 226 N. W. 225, it was sought to enforce a lien upon an apartment building for the price of forty-nine gas ranges which had been installed therein. The court was of the opinion that the gas ranges were fixtures and that the plaintiff was entitled to a lien as prayed. The court, after referring to the tests which are ordinarily applied in determining controversies relating to fixtures, said:

"In applying these tests, consideration must be given to the nature of the structure and the use to which it was to be put when completed. The building was erected for use as an apartment house, a family to occupy each apartment. As is usual in such buildings, the several apartments become homes for the occupants, with the usual conveniences for housekeeping installed therein. Among these are the appliances for heating, lighting, and cooking. Their use for this purpose necessitated the installation of stoves or ranges, and desirable tenants could not likely be secured without them. Gas ranges were decided on as the practical way of supplying this need, and a uniform design was adopted for each apartment."

What was there said is equally applicable to iceboxes, *i. e.,* refrigerating, and especially those which are a part of and connected with a refrigerating unit which serves an entire building. An icebox in a private residence would ordinarily be considered personal property.

As to the rollaway beds, which were in no manner attached to the freehold, a closer and perhaps more difficult question is presented. We, however, reach the conclusion that these rollaway beds, under all of the circumstances, were properly held by the circuit court to be fixtures. The building in which they were contained was an apartment building. It was constructed as such and for the sole purpose of leasing the several apartments therein to tenants. The apartments were small four-room apartments, doubtless containing a living room, a bedroom, a dining room, and a kitchen. In each apartment a so-called closet was constructed for the sole purpose of receiving a rollaway bed when not in use. By means of the closet and the rollaway bed, the sleeping facilities of an apartment were increased without having a second bedroom, thereby avoiding the rental expense of a larger apartment. The fact that the closets were constructed for the sole purpose of taking care of the rollaway beds when not in use is a strong circumstance tending to show that they were fixtures and intended to be a part of the apartment building, and that it was clearly intended to devote such beds to the use of the realty. This holding is consistent with the ruling in *Thomsen v. Cullen, supra,* in which it was held that flasks used in carrying on a foundry business, though not physically attached to the realty, were necessary integral parts of the plant, and that as between mortgagor and mortgagee, they should be considered realty. See also *McCorkle v. Robbins,* 222 Wis. 12, 267 N. W. 295. In *Hook v. Bolton,* 199 Mass. 244, 85 N. E. 175, 17 L. R. A. (N. S.) 699, it was held, in a controversy between a mortgagor and a mortgagee, involving a dwelling house, that a gas stove and window shades contained in such premises were not fixtures. In alluding to the situation in which an apartment house might be involved, the court said (p. 247):

"It may be that certain apartment houses, or other dwelling houses designed for occupation by tenants, are constructed in some of our cities and intended to be used in such

a way that the introduction of such gas stoves and window shades by the owner, to go with the house as a part of it, for use by the tenants, may hereafter be proved at a trial.   See *Jennings v. Vahey,* 183 Mass. 47.   It is entirely possible that the mode of construction and use of certain kinds of houses may be such that articles of this kind will be made a part of the house for permanent retention and use in the places where they are put.   If it becomes a practice to build and use houses in such a way these articles may be put in as fixtures."

The situation there alluded to is the situation shown by the facts of this case.

It may be stated, in conclusion, that neither Louis B. Shapiro, Rose Shapiro, nor any of their agents, were produced upon the trial as witnesses, and consequently there was no testimony as to their intentions.   The giving of the bill of sale when foreclosure was imminent may not unreasonably be said to have been an attempt to save something from the wreck in the apartment-building venture.

*By the Court.*—Judgment affirmed.