## PULSFUS POULTRY FARMS, INC., Larry W. Pulsfus and Jayne E. Pulsfus, Plaintiffs-Respondents,

v.

## TOWN OF LEEDS, a Wisconsin municipal corporation, Defendant-Appellant.†

Court of Appeals

*No. 87–1033. Submitted on briefs February 9, 1988.—Decided April 21, 1988.*

(Also reported in 424 N.W.2d 737.)

---

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

---

For the defendant-appellant the cause was submitted on the briefs of *Jeffrey P. Clark* and *Jean M. Williams* and *Isaksen, Lathrop, Esch, Hart & Clark,* of Madison.

For the plaintiffs-respondents the cause was submitted on the brief of *Jean G. Setterholm,* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison.

Brief of amicus curiae was filed by *Richard J. Stadelman,* of Shawano, on behalf of *Wisconsin Towns Association.*

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. The Town of Leeds appeals from a judgment declaring a layer facility owned and operated by Pulsfus Poultry Farms, Inc., to be exempt from property taxation under sec. 70.111(9), Stats. The issue is whether the facility may be considered "farm ... machinery ... actually used ... in farming" within the meaning of the statute. Resolution of the issue necessarily involves interpretation of the "use-function" test as developed in *Revenue Dept. v. Greiling,* 112 Wis. 2d 602, 334 N.W.2d 118 (1983), and *Ladish Malting Co. v. Dept. of Revenue,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980). We conclude that *Greiling* and *Ladish* compel the conclusion that the facility comes within the farm machinery exemption and we therefore affirm the judgment.

The facts are not in dispute. As part of its egg-producing activities, Pulsfus maintains a "layer house" containing approximately 10,800 cages, each cage containing eight hens. It is constructed of steel beam framing and metal siding on a concrete foundation. The lower portion supports the rest of the structure and related equipment, in addition to pro-

viding a facility for the collection of manure. The hen cages are on three decks. They are interconnected and supported by truss rods. Feed troughs run in lines outside the cages, and a conveyor belt system runs underneath to catch the eggs and transport them to a separate packaging facility. The belt system is not mounted to the floor or walls, but is suspended from the ceiling. The main electrical equipment is located outside the house, and the internal electrical system is hung on the side walls.

There are two feed bins outside the structure. They are equipped with an augur-and-chain system which carries the feed inside and moves it down the troughs and past the cages. A series of pipes, attached to the cages by plastic straps, provides water and necessary medication to the hens. The entire system is automated. The farmer-operator uses a system of suspended walkways to enter the structure to observe the hens, repair equipment, etc. The operator spends only a few hours a day on such activities. All in all, the layer house creates a controlled environment for the hens, automatically controlling the temperature, light and humidity twenty-four hours a day. The hens are not aware whether it is light or dark, hot or cold, windy or still. They are fed, watered, medicated and relieved of their eggs and wastes by automated equipment and machinery.

In 1983, the town assessed the house as real property subject to taxation, and Pulsfus commenced this action seeking a declaration that the town's assessment was unlawful on grounds that the facility was exempt under sec. 70.111(9) Stats. The trial court found in Pulsfus's favor, and the town appealed. Other facts will be discussed below.

Tax exemptions are matters of legislative grace and are strictly construed. *Ramrod, Inc. v. Department of Revenue,* 64 Wis. 2d 499, 504, 219 N.W.2d 604, 607 (1974). This does not mean, however, that the interpretation of a statutory exemption need be unreasonable or undertaken in the narrowest possible manner. *Pabst Brewing Co. v. Milwaukee,* 125 Wis. 2d 437, 445, 373 N.W.2d 680, 684 (Ct. App. 1985). "A strict but reasonable construction seems to be the pithy and popular statement of the rule." *Id.,* quoting *Ladish,* 98 Wis. 2d at 502, 297 N.W.2d at 58.

The town argues first that the facility is a "building" and thus part of the real estate which cannot be reached by the "farm machinery" exemption—an exemption it contends is limited to personal property. It is true that sec. 70.111, Stats., is entitled *"Personal property exempted from taxation,"* but Pulsfus correctly points out that section titles are not part of the law. Sec. 990.001(6), Stats; *Hoeft v. Milwaukee & Suburban Transport Corp.,* 42 Wis. 2d 699, 707–08, 168 N.W.2d 134, 138 (1969). While section titles are useful in resolving statutory ambiguities, we do not face that situation here because we believe *Greiling* and *Ladish* control our interpretation of sec. 70.111 in this case.[1]

---

[1]For the same reason, we need not consider the town's argument that we must determine whether various elements of the facility constitute "fixtures" within the meaning of *Dept. of Revenue v. Smith Harvestore Products,* 72 Wis. 2d 60, 240 N.W.2d 357 (1976), and *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N.W. 429 (1919). The usefunction analysis is mandated in this case, and that analysis does not require the court to consider whether the machinery for which the exemption is claimed is affixed to the real estate so as to become a fixture under principles of real estate law, but only how the property is being used and functioning. Whether the facility is attached to the

In *Greiling,* the issue was whether a greenhouse was a "machine used in floriculture thereby qualifying its components for an exemption from the state use tax ...." *Id.,* 112 Wis. 2d at 603, 334 N.W.2d at 119. The statute granting the exemption, sec. 77.54(3), Stats., provided that receipts from the sale or use of "machines ... used directly in farming ... or floriculture" were exempted from use taxes. The greenhouse at issue consisted of an enclosure constructed out of metal tubing and polyethylene film, with shading, irrigation and ventilation systems designed to provide the optimum environment for plant production. Temperature, humidity, airflow and sunlight were monitored and controlled to permit maximum plant growth.

The *Greiling* court noted that the term "machine" was not defined in the statute, and adopted the following definition:

> (1) "a structure consisting of a framework and various fixed and moving parts, for doing some kind of work." Webster's New World Dictionary Second College Edition (1980).
>
> (2) "every mechanical device or combination of devices to perform some function and produce a certain effect or result." 69 C.J.S. *Patents,* sec. 10 at 183 (1951).

*Greiling,* 112 Wis. 2d at 605–06, 334 N.W.2d at 120. The court, noting that the greenhouse did not function simply as a shelter or storage area for plants, but "actively produce[d] the artificial environment necessary to produce plants for commercial use," stated

---

realty, or has a building-like appearance, or has incidental functions, is immaterial under the cases defining and applying the use-function test.

that it thus must be considered a machine within the quoted definitions. *Id.*

The court adopted the "use-function" test of *Ladish.* Under that analysis, the central question is "whether the structure is one 'whose utility is principally and primarily a significantly contributive factor in the actual manufacture or production of the product itself.'" *Ladish,* 98 Wis. 2d at 506, 297 N.W.2d at 60, quoting 5 Mertens, *Law of Federal Income Taxation,* sec. 32A.14, at 50 (rev. ed. 1980). While *Ladish* interpreted a statute dealing with tax exemptions for "manufacturing machinery," rather than "farming" or "floricultural" machinery, the *Greiling* court saw no reason not to apply the use-function test to the latter class as well. *Id.,* 112 Wis. 2d at 607, 334 N.W.2d at 121. In so doing, the court noted that the greenhouse was designed solely to nurture and produce plants, and could not be viewed as a storage facility because "it has an active function of creating and controlling an environment conducive to the production of floricultural crops ... [and] is a significant contributive factor in the production of plants. On this record, it has no other purpose or function, nor could it be successfully adapted to another use." *Id.*

The town and *amicus curiae,* the Wisconsin Towns Association, attempt to distinguish *Greiling* and *Ladish* on grounds that both cases dealt with the manufacture or production of products, whereas we are dealing here with an agricultural building "used to house and shelter both animals and persons caring for animals." We disagree.

It is true that *Ladish* involved the exemption for manufacturing machinery and equipment—the so-called "M & E" exemption. *Greiling,* however, applied the *Ladish* usefunction test to the exemption for

"machines ... used directly in farming ... or floriculture," *Greiling,* 112 Wis. 2d at 603 n. 1, 334 N.W.2d at 119, an exemption drawn in language substantially identical to the exemption for "machinery ... actually used ... in farming" which is at issue here. The nearly identical language of the two statutes, and the supreme court's application of the use- function test in *Greiling* compel the conclusion that it is equally applicable to claims of exemption under sec. 70.111(9), Stats.

We are also satisfied that the trial court correctly applied the test to the Pulsfus layer house. The town argues that the facility does not meet the test because it is designed and employed "to provide shelter and housing for the hens and convenient working space for the operator of the facility." The town asserts that the facility is simply a replacement for a tradition chicken coop, and thus its utility is not "principally and primarily a significantly contributive factor in the actual manufacture or production of [a] product" within the meaning of the rule. *Pabst,* 125 Wis. 2d at 445–46, 373 N.W.2d at 685 (citation omitted). The trial court saw it as something different, as do we.

While there was testimony that the facility was designed at least in part for the convenience of the operator's daily tasks, it has no heat, water or toilets. The floor and lower portion of the structure is a collecting point for manure, and its only provision for human use is the suspended walkway which allows the operator to monitor the hens and maintain the equipment. As indicated, the operator spends only two to three hours a day on these tasks. The entire operation, from the provision and regulation of heat, light and ventilation, to feeding and medicating the

hens and collecting their eggs and wastes, is automated. The feed bins and feed control scales are located outside the facility, as are the main electric panel and switches for the egg conveyor belt system. The builder of the facility testified that it was designed and constructed for only one purpose, the production of eggs, and he had never known a structure of this type to be converted to any other use. He stated that it would be impractical and economically infeasible to convert the facility into a traditional hen house or chicken coop.

The Pulsfus layer hen facility is little different from the malt house and appurtenant areas in *Pabst,* and we noted there that "[t]he fact that some human activity, incidental to a structure's function, is carried on within the structure, does not mean that [it] provides general working space. ... [T]he working space provided in the malt house is merely incidental to its principal function or use." *Id.,* 125 Wis. 2d at 453, 373 N.W.2d at 688 (citation omitted). More importantly, the layer house is nearly identical to the automated greenhouse in *Greiling*: "[It] was designed solely to ... produce [eggs]. It cannot be viewed merely as a storage [or shelter] facility because it has an active function of creating and controlling an environment conducive to the production of [eggs]. This [structure] is a significant contributive factor in the production of [eggs]. ... [I]t has no other purpose or function, nor could it be successfully adapted to another use." *Id.,* 112 Wis. 2d at 607, 334 N.W.2d at 121.

The legislature has seen fit to phrase the "farm machinery" exemption in sec. 70.111(9), Stats. in language nearly identical to the "M & E" exemption in sec. 70.11(27), and the "machine[ry] ... used directly

in farming ... or floriculture" exemption in sec. 77.54(3), Stats. The supreme court has held that the use-function test is the appropriate means of evaluating claims for exemption under the latter two statutes, and we consider that determination to control our interpretation of sec. 70.111(9). We hold, therefore, that the use-function test of *Greiling* and *Ladish* is equally applicable to exemptions under sec. 70.111(9), and that the trial court correctly applied that test to the Pulsfus layer house.

*By the Court.*—Judgment affirmed.

GARTZKE, P.J. (*dissenting*). The majority's analysis is incomplete. The majority agrees with the trial court's conclusion that the "layer facility" is a farm machine. Like the trial court, the majority has not decided, however, whether the facility is a fixture. I conclude that the facility is a fixture and is not exempt from general property taxes under sec. 70.111(9), Stats. I reach the same conclusion as to the facility's interior installations and two related feed storage bins. I would reverse the judgment.

The farm machinery exception in sec. 70.111(9), Stats., is ambiguous. A farm machine, such as a tractor, can operate completely free of the land. The statute undoubtedly exempts such farm machines. Other farm machines, such as motors and engines, may be fixtures and therefore land. Reasonable persons can conclude that because fixtures are traditionally treated as land, farm machinery which have become fixtures have lost their character as farm machinery and therefore are not exempt under sec. 70.111(9).

The milkhouse equipment exemption in sec. 70.111(14), Stats., recognizes but cures the same

ambiguity. Subsection (14) contains the clarifying provision that the exemption "shall apply whether such equipment is deemed personal property or is so affixed to the realty as to be classified in the category of real estate." The farm machinery exemption in sec. 70.111(9) contains no such curative provision. We must therefore determine whether the farm machinery exemption applies to machines which have become fixtures. I conclude it does not.

The supreme court recognizes that "[l]ong-standing administrative construction of a statute is accorded great weight in the determination of legislative intent because the legislature is presumed to have acquiesced in that construction if it has not amended the statute." *Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 733, 281 N.W.2d 94, 112 (1979), *aff'd,* 447 U.S. 207 (1980). The *Exxon* court announced that principle in connection with an interpretation of a tax statute by the Department of Revenue. The same principle is recognized by other authorities. Thus, a standard text on statutory construction states, "One of the most significant aids of construction in determining the meaning of revenue laws is the administrative interpretation given such acts by the agency that is responsible for its administration and enforcement." 3A Sutherland, *Statutory Construction* sec. 66.04 (4th ed. 1986).

The farm machinery exemption in sec. 70.111(9), Stats., is 77 years old. It was created by sec. 6, ch. 658, Laws of 1911. Despite its age, the exemption has not been substantially amended since its creation. Until today no appellate court has had to determine whether it applies to fixtures. This lack of judicial attention may be the result of the department's unequivocal and unchallenged interpretation of the exemption.

For many years, the department has advised the assessors in this state that the farm machinery exemption applies only to personalty and not to real property or to fixtures. The department has done so in the manual it must distribute to every assessor. It did so even before distribution was required.[1]

The department's, 1 *Property Assessment Manual for Wisconsin Assessors* sec. 21.5-1 (Rev. 12/86) contains a discussion entitled, "REAL PROPERTY V. PERSONAL PROPERTY." That discussion refers to definitions of real and personal property and continues,

> It is important that the assessor understand these definitions in order to properly classify the property to be assessed. There are a number of reasons why the assessor should properly classify property.
>
> 1. May Determine Assessability. Proper classification of real and personal property, in some instances, determines whether the property is taxed at all. *A good example of this is farm machinery, which when owned and used by any person in farming is exempt from property tax as personal property. In some cases the individual's farming machinery may be attached to the real estate in a more or less permanent manner so as to*

---

[1]The department has general supervision over the administration of the assessment laws and over assessors, "to the end that all assessments of property be made relatively just and equal at full value . . . ." Sec. 73.03(1), Stats. The department must publish for the use of and distribution to assessors "detailed assessment manuals." Those manuals must "discuss and illustrate accepted assessment methods, techniques and practices with a view to more nearly uniform and more consistent assessments of property at the local level." Sec. 73.03(2a). The department has been required to publish assessment manuals since 1963, sec. 4, ch. 279, Laws of 1963.

*become regarded by law as part of the real estate and therefore taxable.* [Emphasis added.]

In its discussion of sec. 70.111(9), Stats., the manual states:

Applying the earlier discussed three tests of the law of fixtures to the machinery and equipment found on a farm, in farming, would be exempt from taxation because it *fails* [emphasis added] all three tests of the law of fixtures:

1.  the machinery is not attached to the real estate and there is no damage to the machinery or the real estate if the machinery is removed from the farm;

2.  the intention of the person in farming is not to have the machinery become part of the real estate;

3.  the real estate is not specifically adapted to this specific farm machinery.

There are several gray areas in determining whether farm machinery and equipment is considered a fixture. It must be stressed that each item of machinery must be evaluated individually to determine its exempt status. The four [sic] key phrases that have to be asked of each item to determine whether it is real estate, and therefore taxable, are: attachment, typical intent, and adaptation.

*Id.* at 21.7–14–25.

The manual quotes from a Revenue Department legal opinion issued October 7, 1960:

Relative to the taxability of the water pumps used to protect cranberry marshes from frost ... [i]t has been, and remains our opinion that only machinery that is personal property can be exempt under s. 70.111(9), Stats. Whether a machine is sufficiently attached to or related to real estate so as to

constitute a part of such real estate is a question of fact .... *Id.* at 21.7–15.

*Ladish Malting Co. v. Dept. of Revenue,* 98 Wis. 2d 496, 297 N.W.2d 56 (Ct. App. 1980), and *Revenue Dept. v. Greiling,* 112 Wis. 2d 602, 334 N.W.2d 118 (1983), involved relatively new tax exemption statutes as to which no long-standing administrative interpretation had evolved. The use-function test was first applied in *Ladish,* where we dealt with the manufacturing machinery exemption in sec. 70.11(27), Stats. That exemption was created by sec. 322m, ch. 90, Laws of 1973, effective with the May 1, 1974 assessment. The taxpayer in *Ladish* claimed the manufacturing machinery exemption from its inception in 1974. Consequently, we construed an exemption which lacked the years of administrative interpretation the farm machinery exemption in sec. 70.111(9) has received. The *Greiling* court also dealt with a relatively new tax exemption for farm and horticultural machines. This use tax exemption in sec. 77.54(3), Stats., became law in 1969. Sec. 250, ch. 154, Laws of 1969.

In view of the legislature's acquiescence in the department's long-standing interpretation of sec. 70.111(9) Stats., that farm machinery is exempt only if it is not a fixture and because no showing has been made that the department has wrongly interpreted the legislature's intent, I accept the department's view of the law. The question then is whether the taxpayer's layer facility, a farm machine, is a fixture.

Whether an article is a fixture depends on its annexation to the land, its application or adaptation to the use of the land and the intention of the person who annexes it to the land. *Dept. of Revenue v. Smith Harvestore Products,* 72 Wis. 2d 60, 67–68, 240 N.W.2d

357, 360 (1976). If the article is firmly attached to the land, it meets the annexation test. The manner in which it is used determines the adaptation test. *Id.* at 68, 240 N.W.2d at 360. Intention is the most important factor. *Id.,* 240 N.W.2d at 360–61. Intent is not subjectively determined. Rather, it is the intent which a reasonable person would have in view of the nature of the article, the degree of its annexation and the appropriateness of the article to the use of the land. *Id.* at 69, 240 N.W.2d at 361. If, as here, the facts are undisputed and admit only one reasonable inference as to each of the tests, whether the article is a fixture is a question of law. *Id.* at 68, 240 N.W.2d at 360.

The trial court found that the facility is located on 5.711 acres of an 82-acre farm owned by Larry Pulsfus and leased to Pulsfus Poultry Farms, Inc. The court concluded that the adjacent building used for egg packing is not exempt under sec. 70.111(9), Stats., and that building is not at issue. The court described the remainder of the facility as "a building specifically designed, equipped, and operated for the mass production of a single product, namely—eggs." Inside the building are a three-deck layer cage system, an egg collector system, a bulk feed storage and delivery system, a watering system, a system to control incoming air, and a standby generator. The court concluded that the layer house, with its integrated cages, wiring, water piping, conveyors, and support equipment, constitutes farm machinery.

The only reasonable inference is that the facility is a fixture. Its size and weight alone annexes it to the land. It is devoted to agricultural purposes, and is well adapted to the farmland on which it is situated.

Viewed objectively, the intent of a reasonable owner of such a facility would be to annex it perma-

nently to the land. It is there to stay. It took about 90 days to construct the facility, about two-thirds of which was devoted to site work, electrical and mechanical work. The lessor, Larry Pulsfus, will own the entire facility at the end of ten years, upon payment of $200,000.

The subjective intent of the annexor, Pulsfus Poultry Farms, Inc., while not critical, is instructive. That intent is reflected in the testimony of the annexor's president, who also owned the corporation that constructed the facility. He frequently described the facility as a building and agreed that it is not a "temporary type structure."

Having concluded that the facility is a fixture, I turn to whether the installations within it are also fixtures. The trial court concluded that the entire facility (except for a part not at issue) is an integrated unit which constitutes a farm machine for purposes of sec. 70.111(9), Stats. The conclusion is unavoidable that all installations within the facility are part of that fixture. The only articles about which doubt can exist are the outside installations, two bulk feed storage bins.

The storage bins are located just outside the building. Augers deliver feed from the bins to the automatic feeding system and ultimately to the 500–foot cages. Each bin weighs between 1,500 pounds and 2,000 pounds when empty. Each probably contains 42,000 pounds when full. The bins rest on an I-beam and are stabilized by bolts anchoring them to a concrete slab. Two men could probably unbolt, dismantle and remove the bins in about an hour's time.

The only reasonable inference is that the storage bins are fixtures. They are attached to the land by their weight and bolts. Certainly feed storage bins

serving a larger facility are adapted to land devoted to the facility. The *Harvestore* court said, "[W]hen the article in question is clearly adapted to and is in fact put by the owner of the realty to the use to which he has devoted the realty, this is conclusive evidence of an intent to make a permanent accession to the realty." 72 Wis. 2d at 69, 240 N.W.2d at 361.

I conclude that the layer facility, its interior installations and the storage bins are fixtures. Consequently, I conclude that although the facility, its installations, and the bins constitute a farm machine for purposes of sec. 70.111(9), Stats., it is not exempt from general property taxes. I therefore would reverse the judgment of the trial court, insofar as it is based on a contrary conclusion.